Present: Lacy, Keenan, Koontz, Kinser, Lemons, Agee, JJ.,
and Russell, S.J.

JEFFERY DAVID COX

v.  Record No. 050333  OPINION BY JUSTICE CYNTHIA D. KINSER
                                      January 13, 2006
ROBERT P. GEARY, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Paul F. Sheridan, Judge


The appellant, Jeffery David Cox, challenges the

judgment of the circuit court dismissing, with prejudice,

his legal malpractice claims against Robert P. Geary, John

F. McGarvey, Michael Morchower, Lee W. Kilduff, and the law

firm of Morchower, Luxton & Whaley (collectively the

Attorneys).[1]  The circuit court held, among other things,

that Cox suffered "one indivisible injury for which he had

but one claim or cause of action."  We agree and will

affirm the circuit court's judgment.

I. FACTS AND PROCEEDINGS

In 1991, Cox was convicted in the Circuit Court of the

City of Richmond of abduction, murder, and burglary.  He

was subsequently sentenced to a term of incarceration for

life plus 50 years.  At trial, Geary and McGarvey

represented Cox as court-appointed counsel.  After his

---

[1] Hereinafter, all references to Morchower and Kilduff
will include the law firm of Morchower, Luxton & Whaley,
unless otherwise indicated.

1

convictions, Cox retained Morchower and Kilduff to represent him on appeal.

In 1997, Cox petitioned for a writ of habeas corpus.[2] In an order dated November 14, 2001, the Circuit Court of the City of Richmond granted Cox habeas corpus relief.[3] The next day, in the criminal case of Commonwealth v. Cox, the Commonwealth and Cox jointly moved to vacate the 1991 convictions and dismiss the underlying indictments. The Circuit Court of the City of Richmond granted the motion and entered an order vacating Cox's 1991 convictions, dismissing the indictments, and releasing Cox from custody. Id. At the time of his release, Cox had served approximately 11 years of his sentence.

In December 2001, Cox requested assistance from a member of the Senate of Virginia in procuring compensation from the Commonwealth for his wrongful incarceration. The General Assembly approved "An Act for the relief of Jeffery

_____

[2] The 1997 petition for a writ of habeas corpus was the third such petition filed by Cox.

[3] The circuit court initially dismissed Cox's petition for a writ of habeas corpus. Cox petitioned for an appeal to this Court from that judgment. While his petition for appeal was pending, the parties advised the Court that they had settled the matters in controversy, and we therefore remanded the habeas petition to the circuit court for entry of an order carrying out the terms of the settlement. In the circuit court, the Attorney General of Virginia, who represented the respondent in the habeas proceeding, moved to grant Cox a writ of habeas corpus.

D. Cox" (the Act) on April 7, 2002. 2002 Va. Acts ch. 746.

In relevant part, the Act stated:

> Whereas, Jeffery D. Cox (Cox) was arrested on October 18, 1990 in the City of Richmond and charged with First Degree Murder, Abduction with Intent to Defile and Breaking and Entering; and
>
> Whereas, on February 13, 1991, Cox was convicted of these charges and sentenced to life imprisonment plus fifty years; and
>
> . . .
>
> Whereas, new evidence was revealed which supported Cox's innocence of the crimes including confessions by other parties; and
>
> Whereas, based on this new evidence, the Office of the Attorney General reached a settlement agreement with Cox resulting in the Richmond Circuit Court entering an order on November 14, 2001 vacating the convictions; and
>
> . . .
>
> Whereas at the time of his arrest, Cox was employed as an air conditioning repairman and was working towards obtaining his tradesman's certification as an electrician; and
>
> Whereas, Cox has lost income and a promising career during his eleven years of incarceration; and
>
> Whereas, Cox has also suffered severe physical, emotional and psychological damage as a result of this wrongful incarceration and has no other means to obtain adequate relief except by action of this body; now, therefore,
>
> Be it enacted by the General Assembly of Virginia:
>
> 1. § 1. That there shall be paid for the relief of Jeffery D. Cox from the general fund of the state treasury, upon execution of a release of

3

> all claims he may have against the Commonwealth or any agency, instrumentality, officer, employee, or political subdivision in connection with the aforesaid occurrence, (i) the sum of $350,000 to be paid to Jeffery D. Cox on or before August 1, 2002 . . . and (ii) an annuity for the primary benefit of Jeffery D. Cox . . . in the cumulative amount of $400,000.

As required by the terms of the Act, Cox subsequently executed a document releasing

> all claims [Cox] may have against the Commonwealth or any agency; instrumentality; officer; employee or political subdivision of the Commonwealth in connection with [his] arrest, conviction and incarceration during the time period 1990-2001, subsequently vacated by the Richmond Circuit Court, and more specifically described in the Virginia Acts of Assembly 2002.

Two years later, in November 2003, Cox filed the motion for judgment in the present case alleging that the Attorneys each "fail[ed] to comply with the applicable standard of care as . . . Cox's attorney" and breached their respective "contract of representation" with Cox. Cox sought damages from the Attorneys, jointly and severally, for

> punishment; incarceration; personal injuries; pain and suffering; severe mental anguish; emotional distress; loss of income; humiliation, indignities and embarrassment; degradation; injury to reputation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment,

sexual activity, family relations, recreation, travel, enjoyment and expression.

The Attorneys countered with numerous defensive pleadings, motions, and special pleas. After hearing argument and considering the parties' memoranda on the various motions and other filings, the circuit court dismissed Cox's claims and the motion for judgment with prejudice. In its final order, the circuit court made the following rulings:

1. This Court has subject matter jurisdiction to entertain the claims asserted by the plaintiff in the Motion for Judgment by which he initiated this action (the "Motion for Judgment").

2. The plaintiff has standing to bring this action.

3. The claims asserted by the plaintiff in the Motion for Judgment are not time barred.

4. The claims asserted by the plaintiff in the Motion for Judgment are not barred by collateral estoppel.

5. The injuries suffered by the plaintiff from his incarceration referred to in the Motion for Judgment constitute one indivisible injury for which he had but one claim or cause of action.

6. The habeas relief granted to the plaintiff by this Court was based on newly discovered evidence.

7. An Act for the Relief of Jeffery D. Cox preempted any cause of action the plaintiff may otherwise have had for his incarceration, and there is no civil action that survives it.

8. The claims asserted by the plaintiff in the Motion for Judgment are barred and precluded by:

    a. the doctrine of waiver;
    b. the doctrine of estoppel; and
    c. the plaintiff's election of remedies.

The circuit court also denied Cox's motion to reconsider. Cox appeals from the circuit court's judgment.

## II. ANALYSIS

On appeal, Cox assigns error to the rulings of the circuit court adverse to him. One issue is dispositive—whether the circuit court erred in finding that the injuries suffered by Cox as a result of his wrongful incarceration constitute a single, indivisible injury for which he had one claim or cause of action.

It is a generally recognized principle that there can be only one recovery of damages for a single wrong or injury. Pennington v. Bluefield Orthopedics, P.C., 419 S.E.2d 8, 13 (W. Va. 1992); see also McLaughlin v. Siegel, 166 Va. 374, 377, 185 S.E. 873, 874 (1936) ("the injured party is entitled to but one satisfaction for the same cause of action"). Cox, however, asserts that he had two separate injuries, one caused by the Commonwealth and its officers and employees (the Commonwealth) and the other caused by the Attorneys. He further contends that, for

6

each injury, different types of relief would be available and that any determination about the basis of the General Assembly's compensation to Cox would be an exercise in speculation.  We do not agree.

The injury for which Cox received compensation from the Commonwealth, through the Act, was his wrongful incarceration.  The damages sustained as a result of that injury, as described in the Act, included loss of income and severe physical, emotional, and psychological distress. In the present legal malpractice action, the injury suffered by Cox as a result of the Attorneys' alleged "failure to exercise a reasonable degree of care, skill and diligence in their legal representation of . . . Cox and by breaching their contracts of representation with him" was his wrongful incarceration.  Moreover, the elements of damage Cox seeks in this action are the same as those for which he received compensation from the Commonwealth.

Cox does not argue that the type of injuries for which the General Assembly compensated him differs from the type of injuries he currently alleges.  Nor does he seek in his motion for judgment punitive damages or attorneys' fees, both of which would have differed from his claim against the Commonwealth.  In other words, Cox has made no attempt to differentiate between the injury or the damages caused

by the negligence of the Commonwealth and the injury or damages suffered by Cox as a result of the Attorneys' alleged legal malpractice. See Dwyer v. Yurgaitis, 224 Va. 176, 180, 294 S.E.2d 792, 794 (1982) (because the plaintiff never distinguished between the injuries sustained in two collisions, she suffered an indivisible injury); Dickenson v. Tabb, 208 Va. 184, 192, 156 S.E.2d 795, 801 (1967) ("[a]s [the plaintiff's] injuries were not susceptible of apportionment . . . [they] were indivisible"); see also Maroulis v. Elliott, 207 Va. 503, 511, 151 S.E.2d 339, 345 (1966) (" '[w]here separate and independent acts of negligence of two parties are the direct cause of a single injury to a third person and it is impossible to determine in what proportion each contributed to the injury, either or both are responsible for the whole injury' ") (quoting Murray v. Smithson, 187 Va. 759, 764, 48 S.E.2d 239, 241 (1948)). Thus, we conclude that the circuit court correctly determined that Cox sustained a single, indivisible injury.[4]

---

[4] We note that Code § 8.01-443 allows a plaintiff to bring separate actions against several joint wrongdoers and proceed to judgment in each action. However, the plaintiff's acceptance of payment in satisfaction of such judgment discharges all joint wrongdoers. Cox does not argue that this statute salvages his legal malpractice action against the Attorneys. The legislative policy reflected in Code § 8.01-443, however, is in full accord

It is helpful to compare the nature of Cox's legal malpractice action, i.e., arising out of the Attorneys' defense of criminal charges, with a legal malpractice action arising out of representation in a civil case.  In the former, wrongful incarceration was the sole injury suffered by Cox as a result of the alleged negligent acts of the Commonwealth and/or the Attorneys' alleged breach of their respective contract of representation.  Indeed, a showing of wrongful incarceration is an element of a cause of action for legal malpractice arising out of the defense of a criminal charge.  See Adkins v. Dixon, 253 Va. 275, 282, 482 S.E.2d 797, 801 (1997) (a plaintiff must prove that he/she obtained post-conviction relief as part of a cause of action for a defense attorney's malpractice).  In a typical civil action, the underlying injury is not usually the same as the injury caused by subsequent legal malpractice in representing a party in that action.  For example, a plaintiff's personal injuries arising from an automobile accident constitute the wrong suffered and the injury at issue in a subsequent civil action, but the failure of that plaintiff's attorney to file the action

_____

with the principle that there can be only one recovery for a single, indivisible wrong.  Cox, of course, recovered for his injury by accepting the compensation provided in the Act and executing the release.

9

within the applicable statute of limitations would not also be a cause of the underlying physical injuries. The plaintiff would be separately wronged by the attorney's malpractice. Such is not the situation with regard to the injury sustained by Cox.

This distinction is borne out by our decision in Katzenberger v. Bryan, 206 Va. 78, 141 S.E.2d 671 (1965). There, the purchasers of real property filed a motion for judgment against an attorney who had examined and certified title to the parcel of property they had contracted to purchase. Id. at 79, 141 S.E.2d at 672. At the time the suit was filed, the purchasers had already settled a claim against the sellers of the property for breach of the warranty of title. Id. The attorney filed a plea of accord and satisfaction, arguing that the settlement of the claim against the sellers was a bar to any further proceedings in the action against him. Id. In the motion for judgment filed against the sellers, "the [purchasers] alleged that they were . . . 'without legal title to a portion of the property purported to be conveyed' and were 'without lawful means of ingress and egress' and were 'in danger of being deprived of the use and enjoyment of the entire property.' " Id. at 82, 141 S.E.2d at 674. In the motion for judgment filed against the attorney,

the [purchasers] alleged that they were damaged
because they were "caused to spend a large sum of
money for property to which they did not receive
legal title" and to expend "large sums of money
in the erection of improvements on property to
which they did not have lawful means of ingress
and egress."

Id.

We concluded that the settlement of the cause of
action against the sellers was not an accord and
satisfaction of the purchasers' claim against the attorney.
Id. at 84, 141 S.E.2d at 675.  The purchasers were wronged
by the sellers because the sellers "breached their covenant
that they had the right to convey the land," and the
purchasers were separately wronged by the attorney because
he "breached his duty to use due care in examining the
title to the property."  Id. at 85, 141 S.E.2d at 676.  We
did, however, hold that the purchasers could not have a
double recovery by collecting full compensation in the
second action if they had been paid for a particular
element of damage in the first action.  Id.

Later in Cauthorn v. British Leyland, U.K., Ltd., 233
Va. 202, 355 S.E.2d 306 (1987), we explained our decision
in Katzenberger:

[o]ur decision . . . did not rest solely on the
distinction between the theories of recovery; it was
also based on the difference between the relief sought
in the two actions.  In either proceeding, the
purchasers could have recovered the value of the

11

portion of the property not conveyed and the diminution in the value of the residue caused by the loss of ingress and egress over the portion not conveyed. But a third element of damages was not common to both causes of action. The loss of the use of certain improvements to the property made by the purchasers was an item of consequential damages not available in the contract action against the sellers but recoverable in the tort action as proximately resulting from the negligence of the lawyer. Thus, the purchasers' damages were not identical in the two actions and did not arise from a single indivisible injury; therefore, their release of the sellers was not an accord and satisfaction of their claim against the lawyer.

Id. at 206, 355 S.E.2d at 308.

The difference in the relief sought was likewise a factor in our decision in Hiss v. Friedberg, 201 Va. 572, 112 S.E.2d 871 (1960), another case involving litigation arising out of the purchase of real estate. There, the purchasers filed a suit against the sellers for breaches of warranty and covenants of title and joined in as defendants their attorneys, claiming damages for the attorneys' breach of the employment contract and violation of an escrow agreement. Id. at 573, 112 S.E.2d at 873. The purchasers settled their claims against the sellers, but the suit continued against the attorneys. Id. The purchasers sought to recover their expenses, including counsel fees that they had incurred in the litigation against the sellers. Id.

12

On appeal, the attorneys argued that the release of the sellers and dismissal of the suit against them barred any recovery by the purchasers from the attorneys. Id. at 576, 112 S.E.2d at 874. We disagreed with the attorneys and affirmed the trial court's award of damages to the purchasers. Id. at 579, 112 S.E.2d at 877. In doing so, we stated that the sellers were "liable for damages flowing from their failure to deliver possession of the property as agreed." Id. at 576, 112 S.E.2d at 875. In the suit against the sellers, the purchasers could not recover as damages the amount of counsel fees incurred in that litigation. Id. at 576–77, 112 S.E.2d at 875. In contrast, the attorneys breached their contractual obligation to insure that the purchasers obtained immediate possession of the property, and as a result of that breach, the purchasers had to resort to litigation against the sellers. Id. at 577, 112 S.E.2d at 875.

In the present legal malpractice action, Cox, unlike the purchasers in Katzenberger and Hiss, does not seek to recover from the Attorneys an element of damage different from the damages provided by the Act, such as his litigation expenses incurred in obtaining habeas corpus relief. In the Act, the General Assembly stated that it was compensating Cox for the "physical, emotional and

13

psychological" damages arising out of his "wrongful incarceration."  That injury, and those damages, are the same as Cox now alleges were caused by the Attorneys' legal malpractice.  As stated earlier, Cox has not made any differentiation between the damages under the Act and the damages under his legal malpractice claim.

We now turn to the release executed by Cox upon receiving compensation pursuant to the Act and its effect, if any, on this legal malpractice action in light of our conclusion that Cox suffered a single, indivisible injury.  Cox argues that the provisions of Code § 8.01-35.1 are applicable and therefore the release of the Commonwealth did not discharge the Attorneys from their liability.  In relevant part, Code § 8.01-35.1(A)(1) states that "[w]hen a release or covenant not to sue is given in good faith to one of two or more persons liable in tort for the same injury, [i]t shall not discharge any of the other tort-feasors from liability for the injury."  The premise of Cox's argument is that a legal malpractice action is based in tort, and the Attorneys and the Commonwealth are joint tortfeasors.  Again, we do not agree.

"A cause of action for legal malpractice requires the existence of an attorney-client relationship which [gives] rise to a duty, breach of that duty by the defendant

14

attorney, and that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach." Rutter v. Jones, Blechman, Woltz & Kelly, P.C., 264 Va. 310, 313, 568 S.E.2d 693, 695 (2002). Thus, "an action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract . . . ." Oleyar v. Kerr, 217 Va. 88, 90, 225 S.E.2d 398, 400 (1976); accord Shipman v. Kruck, 267 Va. 495, 501, 593 S.E.2d 319, 322 (2004). It is the contract formed between an attorney and a client that gives rise to the attorney-client relationship; but for the contract, the attorney owes no duty to the client. O'Connell v. Bean, 263 Va. 176, 180, 556 S.E.2d 741, 743 (2002).

Implicit in this contractual relationship is the duty to "'exercise a reasonable degree of care, skill, and dispatch in carrying out the business for which [the attorney] is employed.'" Id. at 181, 556 S.E.2d at 743 (quoting Ortiz v. Barrett, 222 Va. 118, 126, 278 S.E.2d 833, 837 (1981)). Although "the contractually implied duties of due care and fiduciary responsibility employ tort concepts," those concepts and other principles relating to torts are applicable in legal malpractice actions. Id. at 181, 556 S.E.2d at 743; see, e.g., Lyle, Siegel, Croshaw &

15

Beale, P.C. v. Tidewater Capital Corp., 249 Va. 426, 432, 457 S.E.2d 28, 32 (1995) (applying the principle of contributory negligence).  The cause of action, nevertheless, is one for breach of contract.  Oleyar, 217 Va. at 90, 225 S.E.2d at 400.

Cox erroneously relies on our decisions in Shipman and Lyle for the proposition that a cause of action for legal malpractice is a tort claim.  In both cases, this Court said that legal malpractice sounds in tort, Shipman, 267 Va. at 501, 593 S.E.2d at 322; Lyle, 249 Va. at 432, 457 S.E.2d at 32, but we also reiterated the attorney-client contractual relationship.  Id.  In Shipman, we held, as we had previously, that "[t]he statute of limitations for legal malpractice actions is the same as those for breach of contract because although legal malpractice actions sound in tort, it is the contract that gives rise to the duty."  267 Va. at 501, 593 S.E.2d at 322.  Similarly, in Lyle, where we held that the defense of contributory negligence is available in legal malpractice actions, 249 Va. at 432, 457 S.E.2d at 32, we explained:

> [T]he attorney-client relationship is formed by a contract.  Nonetheless, the duty upon the attorney to exercise reasonable care, skill, and diligence on behalf of the client arises out of the relationship of the parties, irrespective of a contract, and the attorney's breach of that

16

> duty, i.e., the appropriate standard of care, constitutes negligence.

Id. We further note that Cox, in his motion for judgment, employed the tort concept of "applicable standard of care" but also alleged as to each of the Attorneys a breach of their respective "contract of representation."

Since Cox's action against the Attorneys for their alleged negligence in the performance of their professional services is an action for breach of contract, the Attorneys are not joint tortfeasors with the Commonwealth. Accordingly, the provisions of Code § 8.01-35.1, which expressly apply only when "two or more persons [are] liable in tort for the same injury," have no bearing on the question of the effect, if any, of the release executed by Cox. To answer that question, we therefore turn to the common law.

In Cauthorn, 233 Va. at 203, 355 S.E.2d at 307, a minor was injured in an automobile collision. After settling with the insurance companies that provided coverage to the operator and owner of the vehicle in which the minor was a passenger,[5] the minor's guardian filed an action against the automobile manufacturer, the wheel manufacturer, and the dealer who sold the automobile,

---

[5] A circuit court approved the settlement.

17

alleging negligence and breach of warranties of merchantability and fitness. Id. at 204, 355 S.E.2d at 307. The defendants filed special pleas asserting that the court-approved settlement and release also released the defendants of any liability for the minor's personal injuries resulting from the automobile accident. Id.

On appeal, we concluded that the minor "sustained injuries which, although they may have had more than a single cause, constituted a single, indivisible injury. [The] settlement with and release of the insurance companies and their insureds constituted an accord and satisfaction of [the minor's] cause of action for her single indivisible injury." Id. at 205, 355 S.E.2d at 308. In reaching this decision, we noted that "[p]rior to the enactment of Code § 8.01-35.1 in 1979, the rule of law in Virginia was that a release of one joint tortfeasor released all joint tortfeasors." Id. at 204, 355 S.E.2d at 307. That rule, as we recognized, references the parties as "joint tortfeasors," but we held that "its application to a particular case does not depend upon their relationship as joint tortfeasors." Id. Thus, even though the minor had two causes of action, one sounding in tort and the other in contract, the Court held "that where there is one indivisible injury, as here, for which settlement

18

has been consummated, unconditional release of one allegedly liable for the injury bars recovery against others also allegedly liable, <u>regardless of the theory upon which liability is predicated.</u>" <u>Id.</u> at 207, 355 S.E.2d at 309 (emphasis added). Applying the principles taught in <u>Cauthorn</u>, we conclude that Cox, having suffered a single, indivisible injury for which he received compensation under the Act, and having unconditionally released certain tortfeasors allegedly liable for his injury, cannot recover from the Attorneys for their alleged liability.

### III. CONCLUSION

Cox suffered a single, indivisible injury—his wrongful incarceration.[6] Because his legal malpractice cause of action is one for breach of contract, the Attorneys and the Commonwealth are not joint tortfeasors, thereby making the protection afforded by Code § 8.01-35.1 unavailable to Cox. Consequently, under the common law, his release of the Commonwealth now bars recovery against others allegedly liable for his wrongful incarceration, regardless of the theory upon which such liability may be predicated.

---

[6] In 2004, the General Assembly enacted Code § 8.01-195.11, which provides for compensation to certain persons wrongfully incarcerated; the statute is inapplicable to this action.

For these reasons, we will affirm the judgment of the circuit court.[7]

Affirmed.

---

[7] In light of our decision, it is not necessary to address the remaining assignments of error or the assignments of cross-error. We do, however, conclude that the circuit court had subject matter jurisdiction.