# CIRCUIT COURT OF FAIRFAX COUNTY

Direct Connect,
UDCC Division

     v.

Medra Systems, L.L.C.,
and Subhash Mehra

August 9, 2010

Case No. CL-2009-17533

BY JUDGE JONATHAN C. THACHER

This matter comes to the Court on Defendant Subhash Mehra's Motion to Set Aside Default Judgment. Upon consideration of the pleadings, oral argument, and the relevant legal authority, the Court denies Defendant's motion.

*Background*

Plaintiff Direct Connect, UDCC Division ("Direct Connect") is a Virginia company. Defendant Subhash Mehra ("Mehra") is an individual residing in New Jersey. Mehra is the principal of Defendant Medra Systems, L.L.C. ("Medra Systems"), a New Jersey limited liability company. In February 2009, Medra Systems and Direct Connect entered into an ATM Marketing Agreement within the Commonwealth of Virginia. On December 8, 2009, Direct Connect brought this action against Mehra and Medra Systems (collectively, the "Defendants"), alleging breach of contract against Medra and fraud against Mehra.

Counsel for Direct Connect served the Complaint and Summons in this case through the Secretary of the Commonwealth in accordance with Va. Code § 8.01-329. The Secretary was served on January 14, 2010. The Complaint and Summons were forwarded by the Secretary to the Defendants on January 21, 2010, via certified mail, return receipt requested. The Affidavit, along with the Secretary's Certificate of Compliance, were filed in this Court on January 22, 2010. Copies of the two certified mail envelopes indicate that the each was returned "unclaimed" on February 8, 2010. Neither Mehra nor Medra Systems filed responsive pleadings within 21 days of service, and on February 19, 2010, Direct Connect filed a Motion for Default. On March 19, 2010, Medra Systems, who acknowledged receipt of a copy of the Complaint and Summons forwarded by Direct Connect's counsel, filed a Motion to Extend Time to Answer. No such motion was filed on behalf of Mehra. In fact, Mehra did not attend the March 26, 2010, hearing, and he was not represented by counsel. The Court granted both Medra Systems' Motion to Extend Time to Answer and Direct Connect's Motion for Default against Mehra as to liability only. On April 16, 2010, Mehra filed a Motion to Set Aside Default Judgment. He contends that the Court should set aside the judgment entered against him on March 26, 2010, on grounds that the judgment is void due to (1) lack of personal jurisdiction over Mehra and (2) ineffective service of process.

*Analysis*

A. *Personal Jurisdiction*

A judgment rendered by a court that lacked *in personam* jurisdiction over a defendant is void. *O'Connell v. Bean*, 263 Va. 176,

179-80, 556 S.E.2d 741, 742 (2002); *Khatchi v. Landmark Rest. Assoc.*, 237 Va. 139, 142, 375 S.E.2d 743, 745 (1989). Virginia law is equally settled that the purpose of Va. Code § 8.01-328.1, Virginia's long-arm statute, "is to assert jurisdiction over non-residents who engage in some purposeful activity in this state to the extent permissible under the due process clause." *John G. Kolbe, Inc. v. Chromodern Chair Co..*, 211 Va. 736, 740, 180 S.E.2d 664, 667 (1971); *Peninsula Cruise v. New River Yacht Sales*, 257 Va. 315, 319, 512 S.E.2d 560, 562-63 (1999). Furthermore, Va. Code § 8.01-328.1 "is a single-act statute requiring only one transaction in Virginia to confer jurisdiction on our courts." *IT Sales, Inc. v. Dry*, 222 Va. 6, 9, 278 S.E.2d 789, 790 (1981). However, the reach of this statute is not without limits. In order for a non-resident to be subject to the jurisdiction of Virginia's courts, that person must have exercised certain "minimum contacts" with Virginia, such that the maintenance of a suit here against that person would not offend "traditional notions of fair play and substantial justice." *Pennsylvania Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. at 319, 512 S.E.2d at 562 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

Va. Code § 8.01-328.1(A) authorizes courts to exercise personal jurisdiction over persons who act directly or through an agent as to causes of action arising from nine separate categories of "contacts" with the Commonwealth of Virginia. However, Va. Code § 8.01-328.1(C) limits the breadth of the statute to encompass "only a cause of action arising from acts enumerated in this section. . . ." when jurisdiction over a person is based solely upon this long-arm statute. Thus, a determination of the reach of Virginia's long-arm statute in a given case necessitates a two-prong analysis. First, a court must determine whether the language of the statute authorizes jurisdiction over the defendant in the given case. If so, the court must then consider whether the exercise of jurisdiction over the defendant would comport with the dictates of the Due Process clause of the Fourteenth Amendment to the United States Constitution. *Ellicott Mach. Corp. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993).

Mehra contends the default judgment entered against him is void because this Court's exercise of jurisdiction over him is improper. Mehra asserts that neither his February 2009 trip to Virginia in his capacity as an officer of Medra Systems, nor the fact that he signed a contract in Virginia on behalf of Medra Systems during that trip, is sufficient to confer jurisdiction on him because he was at all times acting solely in a representative capacity on behalf of Medra Systems. Direct Connect

argues that this Court's exercise of personal jurisdiction over Mehra is proper because the count against Mehra individually is for fraud based on misrepresentations arising from the contract which was executed in Virginia in February 2009 between Direct Connect and Medra Systems. The Supreme. Court of Virginia has not addressed this specific issue, but the reasoning of the various courts which have sought to provide a reasoned analysis of this issue is instructive.

## B. *Long-Arm Statute*

In analyzing the first-prong of the analysis, this Court must decide whether Va. Code § 8.01-328.1 authorized service of process to be effected on Mehra. It is clear which of the nine categories of "contacts" in § 8.01-328.1(A) Direct Connect asserts applies to Mehra. Count II of the Complaint alleges fraud on the part of Mehra while Mehra was in Virginia, an allegation which falls within § 8.01-328.1(A)(3). The Virginia long-arm statute provides, in pertinent part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [c]ausing tortious injury by an act or omission in this Commonwealth. . . ." Va. Code Ann. § 8.01-328.1(A)(3). Mehra contends, however, that, while in Virginia, his actions do not fall within the scope of the code section because he was acting *solely* within his capacity as an officer and agent of Medra Systems.

The United States Court of Appeals for the Fourth Circuit has directly addressed this issue in a case which is factually similar to the instant case. In *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052 (4th Cir. 1983), the plaintiff alleged that, in the course of negotiating the sale of real estate, the foreign corporation's Vice-President, a non-resident individual, made a number of false and fraudulent representations about the conditions of the property. 713 F.2d at 1054. All of the alleged misconduct of the defendant Vice-President, who at all times acted as an agent of the foreign corporation, occurred in the forum state. *Id.* Despite the defendant Vice-President's assertion that he had "acted solely in a representative capacity on behalf of the Bank [the foreign corporation] in all his contacts with [the forum state]" and that, under those circumstances, "the assertion of jurisdiction of [his] person would be contrary to the Fourteenth Amendment," the Fourth Circuit found that there was no question of the amenability of the defendant Vice-President to the jurisdiction of the forum state. *Id.* at 1065. The Fourth Circuit held that a non-resident individual who commits a tort within the forum state is

subject to suit in that state *regardless* of whether he was then acting in his "corporate or personal role." *Id.* (emphasis added). The court, however, specifically noted that the result would have been different "had [the defendant's] connection with the tortious action been conducted *without* the forum state. . . ." *Id.* (emphasis added). The court's articulation of the rationale underlying this distinction, which bears directly on this court's analysis in the instant case, is as follows:

> After canvassing the reasoning of the various courts which have sought to provide a reasoned analysis of the question, we are persuaded that, when a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of due process. On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

*Id.* at 1064-65 (emphasis added).

Similarly, the United States Supreme Court has also recognized the distinction between a corporation and its agents when determining the sufficiency of the contacts to establish personal jurisdiction over an individual. In *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), the Supreme Court addressed whether a reporter and editor working principally in Florida for a national tabloid could be sued in California for alleged defamatory statements included in an article that caused injury to an entertainer in California. The Court found that the intentional conduct of the individuals was calculated to cause injury in California and that jurisdiction was therefore properly asserted over them. However, the Court opined as follows:

> Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. *On the other hand, their status as employees does not somehow insulate them from jurisdiction.* Each defendant's contacts with the forum State must be assessed individually.

*Id.* at 790 (emphasis added).

The specific tortious act Mehra is alleged to have committed, fraud, is alleged to have occurred within Virginia. Specifically, Direct Connect alleges that Mehra made misrepresentations of material facts which induced Direct Connect to enter into a contract with Medra Systems. This Court is persuaded that its exercise of jurisdiction over Mehra is proper regardless of whether Mehra, while in Virginia, was acting in his "corporate or personal role." Furthermore, Direct Connect's contention that Mehra committed fraud while in Virginia falls within the scope of § 8.01-328.1(A)(3). As such, under the first prong of the applicable two-prong analysis, a basis existed for this Court to exercise *in personam* jurisdiction over Mehra at the time Direct Connect obtained the judgment against him.

## C. *Minimum Contacts*

The analysis of the second prong yields the same conclusion. The Due Process Clause "does not contemplate that a state may make a binding judgment … against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977) (quoting *International Shoe Co. v. Washington*, 326 U.S. at 319). The test established under such standards requires sufficient "minimum contacts" of the non-resident with the forum state as "not [to] offend 'traditional notions' of fair play and substantial justice" by providing a "sufficient connection between the [non-resident] defendant and the forum State to make it fair to require defense of the action in the forum," *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 91, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978). This burden has been held to be satisfied when there has been "some act" related to the cause of action alleged by which the non-resident defendant "purposefully avails [himself] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). There is no distinction made in these cases of the role in which the defendant performed his tortious acts, whether for his personal benefit or

for the benefit of an employer or third party; the controlling issue is simply whether the non-resident defendant, whatever role he may have occupied, had such "minimum contacts."

The existence of minimum contacts of Mehra with Virginia is clear. Mehra came to Virginia in order to execute a contract in Virginia, and, in the course of executing that contract, he allegedly made various representations which Direct Connect claims were fraudulent, and, on the basis of such fraudulent representations, induced Direct Connect to enter into a contract and allow Mehra to use Direct Connect's data processing and other related services. In so doing, Mehra availed himself "of the privilege of conducting activities within the forum State" and rendered himself amenable to service of process under the long-arm statute of the forum state. Accordingly, this Court holds that Fairfax County Circuit Court properly exercised *in personam* jurisdiction over Mehra at the time that Direct Connect obtained judgment against him.

### D. *Service of Process*

Mehra and Medra Systems were served by constructive service as a non-resident and a foreign corporation, respectively, through the Secretary of the Commonwealth under Va. Code § 8.01-329. That statute provides, in pertinent part:

> Such service shall be sufficient upon the person to be served, provided that notice of such service, a copy of the process or notice, and a copy of the affidavit are forthwith mailed by certified mail, return receipt requested, by the Secretary to the person or persons to be served at the last known post-office address of such person, and a certificate of compliance herewith by the Secretary or someone designated by him for that purpose and having knowledge of such compliance, shall be forthwith filed with the papers in the action. Service of process or notice on the Secretary shall be effective on the date the certificate of compliance is filed with the court in which the action is pending.

Mehra argues service of process was improper because he never received the Complaint and Summons forwarded to him by the Secretary. Mehra further claims that he was not aware that suit had been filed until February 16 when Medra Systems received a copy of the Summons and

Complaint sent by regular mail by counsel for Direct Connect. Mehra did not receive a copy of the Summons addressed to him in his individual capacity, and he was not aware that service had been attempted on him until March 26, 2010, when counsel for Medra Systems appeared in court. He did, however, in his capacity as Medra System's registered agent, receive the Notice and Affidavit addressed to Medra Systems. Mehra argues that, because the Notice and Affidavit he received on behalf of Medra Systems did not list Mehra as the defendant and did not list Mehra's "last known post-office address" as required by statute, the service was improper and the default judgment entered against him void. According to Direct Connect, service on Mehra was complete and conclusive because all of the requirements for service on the Secretary were met, and the fact that the certified mailings came back "unclaimed" does not render service ineffective. Furthermore, Direct Connect argues that Mehra acknowledges receipt of a copy of the Complaint on February 16, and, therefore, was aware at the time that he was clearly named a defendant in the case.

The Supreme Court of Virginia has held that, if a statute provides for constructive service, the terms of the statute authorizing it must be strictly followed or the service will be invalid and any default judgment based upon it will be void. *O'Connell v. Bean*, 263 Va. 176, 179, 556 S.E.2d 741 (2002). If, however, all of the requirements of § 8.01-329 are met, service is complete and conclusive regardless of whether the defendant receives actual notice of the litigation. *Basile v. American Filter Service, Inc.*, 231 Va. 34, 340 S.E.2d 800, 802 (1986). Consequently, the only question here is whether the requirements of § 8.01-329 were met in regards to service upon Mehra. Whether or not Mehra received actual notice of the litigation is irrelevant in determining whether or not service was valid. *Id.* Notably, however, Mehra *was* aware that proceedings against him were going forward due to other mailings he received which he acknowledged, including service he received on behalf of Medra Systems.

Service was made on the Secretary by Direct Connect on January 14, 2010. The Secretary forwarded the papers to the address listed on the Affidavit by certified mail on January 21, 2010, and the Affidavit along with the Secretary's Certificate of Compliance were filed in this Court on January 22, 2010. Direct Connect's affidavit to the Secretary regarding service on Mehra provides his "last known address" as 931 Ellis Parkway, Edison, New Jersey 08820 ("the New Jersey address"), which is also Medra Systems' business address. Mehra, however, claims that the New

Jersey address is not his last known address. Because the other requirements of the statute have been met, if the New Jersey address is the "last known post-office address" of Mehra, service was validly obtained on January 22, 2010.

Accordingly, interpretation of the phrase "last known post-office address" is necessary. The Supreme Court of Virginia has not yet interpreted the phrase, but opinions from other courts are instructive. In *Cordova v. Alper*, 64 Va. Cir. 87 (Fairfax 2004) (Klein, J.), the Court set aside a default judgment for improper service of process, which was attempted via constructive service through the Secretary of the Commonwealth. In interpreting the phrase "last known post-office address," the Court looked to constitutional due process principles, U.S. Supreme Court cases, and the existing Virginia case law on constructive service of process. After an exhaustive analysis of the issue, the Court interpreted the phrase "last known post-office address," as set out in Va. Code § 8.01-329 to mean "the address at which a person would reasonably expect the addressee to actually receive mail, based upon all information then known or reasonably available to the addressor." *Cordova*, 64 Va. Cir. at 117-18. Under this interpretation, the Court quashed service of process and set aside the default judgment. *Id.* at 120. The Court explained that the address given to the Secretary for service of process did not satisfy the above test because the defendant had not received mail there for a number of years. *Id.* Furthermore, had the plaintiff's counsel investigated, available information would have confirmed that the address was no longer good. *Id.* at 118. The Court concluded that "the means employed to give [the defendant] notice … of a two million dollar claim against him was intended merely to satisfy a perceived minimum threshold to effect service of process through the Secretary of the Commonwealth and was utterly lacking any true intent to inform [the defendant] of the ongoing proceedings against him." *Id.* at 120. Accordingly, the Court found that neither plaintiff nor his counsel, with all of the information then known or reasonably available to them, could reasonably have expected mail to be received by the defendant, and the affidavit submitted by plaintiffs counsel "failed to comport with the due process requirement [the court] has found to be an inherent part of Va. Code § 8.01-329." *Id.*

The issue regarding the last known post-office address in *Cordova* is nearly the same as in the instant case, but there are important factual differences. First, unlike in *Cordova*, the New Jersey address is the actual business address of Medra Systems, and Direct Connect had a good faith basis for believing that Mehra would receive mail at that address. It was

reasonable for Direct Connect to expect that Mehra, as an officer and principal of Medra Systems, to "actually receive mail" at the New Jersey address "based upon all information then known or reasonably available" to Direct Connect. Second, while the plaintiff in *Cordova* had never sent anything to the address given to the Secretary, counsel for Direct Connect had forwarded a letter to Mehra at the New Jersey address as recently as November 2009 in regards to the parties' business dealings. *See Virginia Lime Co. v. Craigsville Distributing Co.*, 670 F.2d 1366 (4th Cir. 1982) (holding that notice requirements were satisfied "when process is sent to the address at which the parties regularly corresponded by mail, and the party serving process reasonably could expect that process would reach the defendant at that address"). Third, unlike the defendant in *Cordova*, Mehra acknowledges receipt, at the very same New Jersey address, of other mailings within the same timeframe. While Mehra claims that he did not receive the Summons and Complaints forwarded to both Mehra and Medra Systems via certified mail by the Secretary on January 21, 2010, Mehra did receive other mailings from Direct Connect at the New Jersey address, including a courtesy copy of the Complaint on February 16, and Default papers on February 23.

Thus, unlike the plaintiff in *Cordova*, Direct Connect's reliance on the Secretary's receipt and mailing of the process in this case is not misplaced. The affidavit listing the New Jersey address as Mehra's last known post-office address is valid. All of the requirements of the statute authorizing constructive service have been met. Accordingly, this Court finds that the Complaint and Summons in this case were validly served via constructive service through the Secretary of the Commonwealth under Va. Code § 8.01-329 on January 22, 2010, the day that the certificate of compliance was filed with the Court. Not only did Mehra fail to file a response within 21 days of service of the Complaint and Summons, but Mehra also failed to file any responsive pleadings after receipt of Direct Connect's Motion for Default on February 23, 2010. Therefore, the default judgment in this case cannot be set aside as void for invalid service or process.

## Conclusion

A basis existed for this Court to exercise *in personam* jurisdiction over Mehra at the time Direct Connect obtained a judgment against him. This Court's exercise of jurisdiction over Mehra is proper regardless of whether Mehra, while in Virginia, was acting in his corporate or personal

role when he allegedly committed the fraud asserted in the Complaint. Further, this Court concludes that the Complaint and Summons were properly served under Va. Code § 8.01-329 as there is no basis under the relevant statute for invalidating service on the Secretary because of Mehra's failure to receive actual notice of the suit. Accordingly, the Motion to Set Aside Default Judgment of May 6, 2010, is denied. The Motion to Extend Time to Answer is also denied.